UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

LYNN KRZYZANOWSKI, o/b/o T.G.K.

        Plaintiff,

v.                                               Case No. 5:08-cv-172-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

        Defendant.
_____/

## ORDER

Lynn Krzyzanowski, on behalf of her minor daughter, T.G.K., appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits. (Doc. 1.)[1] The Commissioner has answered (Doc. 4), and both parties have filed briefs outlining their respective positions. (Docs. 9 & 10.) For the reasons discussed below, the Commissioner's decision is due to be **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

On August 5, 2003, Greg and Lynn Krzyzanowski, on behalf of their daughter, protectively filed an application for children's SSI benefits alleging that Plaintiff became disabled on January 8, 2002 – her date of birth – due to severe asthma and developmental delay. (R. 126-28.) After denials at the initial and reconsideration levels, (R.77-84) Plaintiff requested a hearing before an administrative law judge (ALJ). (R.

---

[1] Even though this action is being brought by T.G.K.'s mother on her behalf, the Court will refer to T.G.K. as the Plaintiff.

75.) On October 3, 2005, ALJ Douglas Walker conducted a hearing, at which Plaintiff's mother, Lynn Krzyzanowski testified. (R. 468-84.) On January 4, 2006, ALJ Walker issued an unfavorable decision. (R. 50-56.)

On March 10, 2006, Mrs. Krzyzanowski requested review of ALJ's Walker opinion and submitted a letter brief and one hundred pages of additional evidence. (R. 87-96, 336-436.) On July 14, 2006, the Appeals Council granted the request for review, vacated the hearing decision, and remanded the case to the ALJ with instructions to provide appropriate rationale for his assessments under the six domains of functioning; provide a credibility finding consistent with the regulations; evaluate the new evidence to assess the severity of impairments; as appropriate obtain updated school records and medical evidence; obtain a consultative examination "if the additional evidence does not clearly depict the claimant's limitations"; and offer the opportunity for a hearing regarding the above matters. (R. 100-01.)

On October 5, 2006, ALJ Walker held a supplemental hearing. (R. 485-508.) On October 23, 2006, ALJ Walker sent to counsel for Plaintiff a letter advising that he had requested consultative examinations for Plaintiff and that it was "necessary for the proper evaluation of your client's claim." (R. 30-33.) No consultative examinations were performed. Nevertheless, ALJ Douglas Walker issued an unfavorable decision on April 24, 2007. (R. 17-29.) The Appeals Council denied Plaintiff's Request for Review (R. 5-7),[2] making the ALJ's hearing decision the final decision of the Commissioner. On May 2, 2008, Plaintiff filed an appeal to this Court. (Doc. 1.)

---

[2] The Appeals Council found good cause for Plaintiff's untimely request for review.

## II. **THE STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[3] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[4] In reviewing the Commissioner's decision, the district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5]

Congress has empowered the district court to affirm, modify, or reverse the decision of the Commissioner, with or without remanding the cause.[6] Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[7] The district court will reverse a Commissioner's decision on plenary review, however, if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly

---

[3] See 42 U.S.C. § 405(g) (2003).

[4] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401 (1971)); *accord*, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; *accord*, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[6] 42 U.S.C. § 405(g) (sentence four).

[7] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

applied the law.[8] Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.[9]

### III. **THE LAW**

The law considers a child disabled, for the purposes of children's SSI benefits, if that child has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[10] However, no child who "engages in substantial gainful activity . . . may be considered to be disabled."[11] A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."[12] The statute does not define "marked and severe functional limitations."

In determining the severity of impairments, the Commissioner must consider the combined effect and combined impact of all of the individual's impairments.[13] In

---

[8] Keeton v. Dep't of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[9] Bowen v. Heckler, 748 F.2d 629, 631, 636-37 (11th Cir. 1994).

[10] 42 U.S.C. § 1382c(a)(3)(C)(I) (2003).

[11] 42 U.S.C. § 1382c(a)(3)(C)(ii).

[12] 42 U.S.C. § 1382c(a)(3)(D).

[13] 42 U.S.C. § 1382c(a)(3)(G).

determining the disability of a child, the Commissioner must make reasonable efforts to ensure that a qualified pediatrician or other specialist evaluates the case.[14]

In accordance with Congressional intent, the regulations define "marked and severe functional limitations" as "a level of severity that meets, medically equals, or functionally equals the listings."[15] The regulations set forth a three-part sequential test the Commissioner must follow when determining disability in children.[16] First, the Commissioner must find that the child is not performing substantial gainful activity.[17] Second, if the child is not working, it must be found that the child suffers from an impairment or combination of impairments that is severe.[18] Third, if there are severe impairments, it must then be found that the child's impairments meet, medically equal, or functionally equal the listings.[19] If the child 's impairments do not meet or medically equal a listing, the Commissioner must then consider whether the child has an impairment or combination of impairments functionally equivalent to a listing.

Provisions for determining functional equivalence are established under 20 C.F.R. § 416.926a. Stated generally, to functionally equal a listed impairment, a child must demonstrate an "extreme" limitation in one domain of functioning, or show a

---

[14] 42 U.S.C. § 1382c(a)(3)(I).

[15] 20 C.F.R. § 416.902 (2003)(all further references to 20 C.F.R. will be to the 2003 version unless otherwise specified).

[16] 20 C.F.R. § 416.924(a).

[17] 20 C.F.R. § 416.924(b).

[18] 20 C.F.R. § 416.924(c).

[19] 20 C.F.R. § 416.924(d).

"marked" limitation in two domains of functioning.[20] There are six domains of functioning to be considered: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.[21] A "marked" limitation in a domain means that the child's impairment "interferes seriously with [their] ability to independently initiate, sustain, or complete activities."[22] An "extreme" limitation in a domain means that the child's impairment "interferes very seriously with [their] ability to independently initiate, sustain, or complete activities."[23]

## IV. **SUMMARY OF THE RECORD EVIDENCE**

Plaintiff, born on January 8, 2002, was five years old at the time ALJ Walker issued his second decision. At the October 5, 2006 supplemental hearing, Gregory Krzyzanowski testified on behalf of Plaintiff. (R. 485-508.)[24] Mr. Krzyzanowski testified that Plaintiff was presently four years old and enrolled in a pre-K program at Inverness Primary School. (R. 493-94.) He testified that it is very hard to understand Plaintiff when she speaks. (R. 494.) Mr. Krzyzanowski testified that Plaintiff has sleep problems and probably only sleeps two full nights out of a week. He reported that he receives notes advising him that Plaintiff does not listen to the teacher or follow directions at school. (R. 496-97.) Plaintiff has trouble with asthma-related wheezing

---

[20] 20 C.F.R. § 416.926a(a).

[21] 20 C.F.R. § 416.926a(b).

[22] 20 C.F.R. § 416.926a(e)(2).

[23] 20 C.F.R. § 416.926a(e)(3).

[24] After the hearing, Mr. Krzyzanoswki learned that he was not Plaintiff's biological father.

6

and if she "doesn't get her medication by a certain time, it just gets really bad." (R. 497-98.) Mr. Krzyzanowski testified that Plaintiff was not progressing at school and that he did not believe that she would be passed to kindergarten. (R. 498-99.)

From January 11, 2002 through August 30, 2003, Plaintiff was seen at the emergency room on six occasions for complaints of crying, diarrhea, asthma, difficulty breathing, congestion, sinusitis, and otitis media. (R 194, 197, 263-309.) During this same period, Plaintiff underwent breathing monitor studies which confirmed episodes of apnea and bradycardia. (R. 199-243.) Treatment notes from Pediatric Associates noted symptoms related to apnea, asthma, reflux, bronchitis, otitis media, oral thrush, and seborrheic dermatitis, for which she was prescribed various medications. (R. 250-62.) From June 2003 through January 2004, Plaintiff was seen by David Powers, M.D. who noted breathing problems, ear pain and asthma exacerbations. (R. 316-26.) Medical records from January, February and April 2005 noted that Plaintiff continued to suffer from otitis media, upper respiratory infection and sinus symptoms. (R. 333-35.)

In evaluating the Plaintiff's application for SSI, the Commissioner employed two different non-examining doctors – Benjamin Johnson, M.D. and James Jamison, M.D. -- to complete a Childhood Disability Evaluation Form (the "Form") about the Plaintiff. The first Form, which was completed by Johnson on November 7, 2003, reflects that Plaintiff's impairments are severe but that those impairments do not meet, medically equal or functionally equal the listings. (R. 310-15.) Johnson found "no limitations" in the domains of "Acquiring and Using Information," "Attending and Completing Tasks," and "Moving About and Manipulating Objects" and a "less than marked" limitation in the domains of "Health And Physical Well-Being," "Caring For Yourself," and "Interacting

and Relating With Others."   The second Form, completed by Jamison on February 19, 2004, shows that Plaintiff has severe impairments, but that those impairments do not meet, medically equal, or functionally equal the severity of a listing.  (R. 327-32.) Additionally, the second Form reflects "no limitation" in the domains of "Moving About and Manipulating Objects",  "Acquiring and Using Information", "Attending and Completing Tasks", and "Interacting and Relating with Others" and a "less than marked" limitation in the domains of "Caring For Yourself" and "Health and Physical Well-Being."

### ***Evidence Submitted To The Appeals Council and After Remand***

Plaintiff submitted records from Citrus County School Board records from January 2004 through January 2005.  On January 19, 2004, Plaintiff was eligible for special education services related to a  developmental delay and speech and language skills. (R. 336-74.) On February 18, 2004, it was noted that Plaintiff's communication disorder resulted in her "inability to express ideas in a developmentally appropriate manner" and that there was a negative social impact. (R. 341.)  When reassessed in September 2004, Plaintiff's expressive language had increased, she had approximately 50 words, began using two-word phrases, could identify big/little and color and number skills were emerging.  Nevertheless, Plaintiff still had an "expressive language delay" and it was suggested that she continue the special education services through Citrus County School System. (R. 354-55.)

On December 8, 2004, Plaintiff was reevaluated by James Hazzard, Ph.D., School Psychologist.  (R. 361-63.) He found that the "only possible moderate to significant developmental delay might lie in the area of communication" and that Plaintiff was scheduled for a speech/language evaluation.  He further noted  that Plaintiff

8

"exhibits no significant developmental delays consistent with Florida criteria for Exceptional Student Placement." (R. 363.) One week later, Evelyn Walker, a special education teacher, performed a speech/language assessment. (R. 364-65.) Ms. Walker found that Plaintiff, who was almost three years old at the time, had auditory comprehension equivalent to a 27 month old child, expressive communication equivalent to a 24 month old child, and total language skills equivalent to a 22 month old child. (R. 364.) She noted that Plaintiff used 1-3 words in sentences with the majority of sentences being one-word in length and that she used nouns and verbs and was beginning to use adjectives. Ms. Walker recommended that Plaintiff continue to receive speech/language services to address her language delay. (R. 365.) On a formal individualized education plan dated January 11, 2005, Plaintiff was placed in the regular classroom where social/emotional behavior was to be addressed throughout the day and she was to participate in speech classes 1-3 periods per week. (R. 370-74.)

Plaintiff also submitted records from Hernando Elementary School for the period of August 16, 2005 through January 27, 2006. (R. 375-404.) For the first report period during her pre-K year at Hernando Elementary, Plaintiff's teacher noted that her attention span was very short and that she had a difficult time staying focused which "tends to hinder her ability to learn and retain skills." (R. 376.) Plaintiff's teacher repeatedly sent home notes reporting Plaintiff's failure to listen and follow directions. (R. 378-99.) In January 2006, Plaintiff's teacher noted that she was "concerned" because Plaintiff was "missing out on many skills being taught." (R. 379.)

Records from Plaintiff's treating physician, Komala Bushan, M.D. from February 26, 2004 through February, 2006 show that Plaintiff was treated for symptoms related to

asthma, sinusitis, upper respiratory infection and rash and was prescribed Augmentin, Pulmicort, Albuterol, and Flovent. (R. 405-36, 441.) Records from Citrus Memorial Hospital show that Plaintiff was seen in the emergency room in May 2003 for symptoms related to Tinea Cruris and viral syndrome; in August 2003 for asthma; October 2004 for sinusitis; and March 2006 with a diagnosis of general nonconvulsive epilepsy. (R. 447-67.)

The ALJ determined that Plaintiff suffers from asthma and a speech/language impairment. (R. 21.) The ALJ then found that Plaintiff's impairments did not meet, medically equal, or functionally equal the criteria for any listed impairment. In concluding that Plaintiff's impairments did not functionally equal any listing, the ALJ found that Plaintiff had no limitation in the domain of acquiring and using information; less than marked limitation in the domain of attending and completing tasks; less than marked limitation in the domain of interacting and relating with others; less than marked limitation in the domain of moving about and manipulating objects; less than marked limitation in the domain of caring for yourself; and less than marked limitation in the domain of health and physical well-being. (R. 23-28.) Accordingly, the ALJ found that Plaintiff was not disabled.

## V. **DISCUSSION**

Plaintiff raises three issues on appeal: (1) the ALJ failed to comply with the remand order of the Appeals Council; (2) the ALJ failed to properly evaluate whether Plaintiff's impairments are functionally equivalent to a listed impairment; and (3) the ALJ did not obtain medical expert testimony regarding whether Plaintiff's impairments met or equaled a listed impairment. All three issues turn on the ALJ's failure to properly

evaluate the records submitted to the Appeals Council – both because he misunderstood their significance and because he failed to obtain a consultative examination and/or expert medical testimony to assess the nature and severity of Plaintiff's impairments.

In order to functionally equal a listed impairment, a child must demonstrate an "extreme" limitation in one domain of functioning, or show a "marked" limitation in two domains of functioning. Here, the ALJ found that the Plaintiff's impairments did not result in either a "marked" limitation in two domains of functioning or an "extreme" limitation in one domain of functioning. Thus, the ALJ found that Plaintiff's impairments did not functionally equal a listing.

Plaintiff contends that the ALJ should have found that Plaintiff had marked limitations in at least two of the domains – "Acquiring and Using Information" and "Attending and Completing Tasks." Based on a thorough review of the record, the Court finds that the ALJ's findings regarding those two domains are not supported by substantial record evidence.

### *Acquiring and Using Information*

The domain of "Acquiring and Using Information" considers how well a child is able to acquire or learn information, and how well a child uses the information she has learned.[25] In concluding that Plaintiff had no limitation in this domain, the ALJ noted that Plaintiff's "most recent evaluation showed the claimant's speech and language skills were on a 2 year olds level with auditory comprehension skills slightly stronger than

---

[25] See 20 C.F.R. §416.926a(g).

expressive language skills." (R. 24.)  The ALJ was referring to Ms. Walker's December 2004 evaluation in which she found that Plaintiff, who was almost three years old at the time, had auditory comprehension equivalent to a 27 month old child, expressive communication equivalent to a 24 month old child, and total language skills equivalent to a 22 month old child. (R. 364.)  However, the ALJ did not appear to understand the significance of these findings.

> Pursuant to the regulations, if a child has not attained the age of 3:
>
> we will generally find that you have a "marked" limitation if you are functioning at a level that is more than one-half but not more than two-thirds of your chronological age when there are no standard scores from standardized tests in your case record.

20 C.F.R. §416.926a(e)(2).

At the time the testing was performed, Plaintiff was almost three years of age, and her scores in expressive communication and total language represented a marked limitation as she was functioning like a child who ranged between 22 and 24 months of age, which was between one-half or 18 months[26] and two-thirds or 24..4 months[27] of her chronological age.

The Commissioner argues that Ms. Walker's evaluation is not entitled to any special consideration because she is not an acceptable medical source; and that Dr. Hazzard's opinion should be entitled to more weight because it is an acceptable medical source.  However, Dr. Hazzard's evaluation is not inconsistent with Ms. Walker's evaluation.  While Dr. Hazzard concluded that Plaintiff "exhibits no significant

---

[26] Three years = 36 months divided by 2 = 18 months.

[27] Three years = 36 months times 0.6777 = 24.4 months.

12

developmental delays consistent with Florida criteria for Exceptional Student Placement" he found that in the area of communication, Plaintiff was equivalent to a 22 to 28 month old child and that she had a "possible moderate to significant developmental delay" in that area. (R. 362-63.)

Accordingly, because the evidence cited by the ALJ actually supports a finding that Plaintiff had a marked limitation in the domain of Acquiring and Using Information, the ALJ's conclusion that Plaintiff had no limitation in that domain is not supported by substantial evidence.

### *Attending and Completing Tasks*

The domain of "Attending and Completing Tasks" considers how well a child is able to focus and maintain attention.[28] The regulations provide that the norm for a preschool age child in this domain is as follows:

> As a preschooler, you should be able to pay attention when you are spoken to directly, sustain attention to your play and learning activities, and concentrate on activities like putting puzzles together or completing art projects. You should also be able to focus long enough to do many more things by yourself, such as getting your clothes together and dressing yourself, feeding yourself, or putting away your toys. You should usually be able to wait your turn and to change your activity when a caregiver or teacher says it is time to do something else.[29]

Limited functioning in this domain includes being easily startled, distracted or over-reactive to sounds, sights, movements or touch; slow to focus on, or failing to complete activities of interest; repeatedly becoming side-tracked or frequently interrupting others;

---

[28] See 20 C.F.R. §416.926a(h).

[29] 20 C.F.R. §416.926a(h)(2)(iii).

easily frustrated and giving up on tasks, including ones the child is capable of completing; and requiring extra supervision to keep engaged in activity.[30]

In concluding that Plaintiff had less than marked limitation in the domain of "Attending and Completing Tasks", the ALJ relied solely on Plaintiff's pre-K teacher's comments on the first-quarter assessment that "the claimant is a sweet and friendly little girl. She likes to play and do centers, but has a very short attention span when it is lesson time. She has a difficult time staying focused." (R. 25.) As an initial matter, it is unclear how this evidence supports the ALJ's finding. Moreover, Plaintiff's pre-K teacher also noted that Plaintiff's difficulty staying focused "tends to hinder her ability to learn and retain skills" (R. 376) and that she "needed to work on" her listening skills, participation in group activities, listening and following directions, participation in learning activities and a variety of learning centers, working independently and learning concepts presented. (R. 377.) Additionally, in weekly progress reports, Plaintiff's teacher repeatedly noted that Plaintiff was not listening or following directions and on at least one occasion she noted that she was "concerned" because Plaintiff was "missing out on so many skills being taught." (R. 378-99.) Accordingly, the ALJ's finding that Plaintiff had less than a marked limitation in the domain of "Attending and Completing Tasks" is not supported by substantial record evidence.

As such, the ALJ's finding that Plaintiff does not have a marked limitation in any domain is not based on substantial evidence.

---

[30] 20 C.F.R. §416.926a(h)(3).

The ALJ's failure to properly evaluate the school records underscores the fact that he should have obtained an opinion by a psychologist regarding the nature and severity of Plaintiff's impairments. In its remand order, the Appeals Council stated that "[i]f the additional evidence does not clearly depict the claimant's limitations, the [ALJ] may obtain a consultative examination, including a medical source statement about how the impairment(s) affects the claimant's functioning." (R. 101.)

Although the ALJ stated that a consultative evaluation was "necessary for the proper evaluation" of Plaintiff's claim, no consultative evaluation was performed. In his Decision, the ALJ explained as follows:

> At the hearing, the undersigned determined a consultative psychological evaluation needed to be performed by a psychologist to determine developmental delays and behavioral problems. However, on March 12, 2007, an email from a Division of Disability Determinations employee, Ms. J. Hirschman, notified ODAR, that she had had a phone call from Greg Krzyzanoski stating that he was cancelling the consultative psychological examination because DNA testing showed he was not the claimant's father. He further stated that since he was not her father, he no longer had any contact with the child. Ms. Hirschman called the claimant's attorney and spoke once to him, but as of March 12, 2007, he had not returned her calls. Ms. Hirschman did not know where Teona was living and/or with whom, so the consultative examination request was sent back to ODAR until custody and adult responsibility can be determined.

Consistent with the ALJ's above statement, there is evidence in the file that Plaintiff's father cancelled the scheduled CE and attempts to contact Plaintiff's counsel were unsuccessful. (R. 189.) While it would have been better if the ALJ had taken steps to reschedule the consultative evaluation or if he had advised Plaintiff in writing that the consultative examination was no longer necessary, the regulations are clear that the Commissioner may find a claimant not disabled if she fails or refuses to take part in a

15

scheduled CE.[31]    As such, the Court cannot say that the ALJ's failure to obtain a consultative examination, in and of itself, was reversible error.

However, the lack of a consultative examination was compounded by the fact that no state agency physician or psychologist assessed the nature and severity of Plaintiff's impairments in light of the voluminous medical records and school records submitted to the Appeals Council.  The ALJ accorded "great weight" to the opinions of the two non-examining state agency pediatricians – Johnson and Jamison – because their opinions "are supported by the medical evidence of record as well as the clinical and diagnostic findings."  However, Johnson and Jamison both evaluated Plaintiff more than three years prior to the ALJ's decision (when Plaintiff was only two years old) and neither one of them reviewed the records submitted to the Appeals Council.  Where, as here, "additional medical evidence is received that in the opinion of the [ALJ] or Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments" the ALJ must obtain medical expert testimony.[32]  Accordingly, on remand, the ALJ should order a consultative examination if appropriate and obtain medical expert testimony regarding whether Plaintiff's impairments meet or equal a listed impairment.

---

[31] See 20 C.F.R. §416.918(a).

[32] See SSR 96-6p.

## VI. **CONCLUSION**

In view of the foregoing, the decision of the Commissioner is **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner for the Administrative Law Judge to: (1) reevaluate whether Plaintiff's impairments meet or equal a listed impairment; (2) if appropriate, order a consultative examination, including a medical source statement of Plaintiff's functional limitations; (3) obtain medical expert testimony regarding whether Plaintiff's impairments meet or equal a listed impairment; and (4) conduct any additional proceedings the Commissioner deems appropriate. The Clerk is directed to enter judgment consistent with this order and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on July 7, 2009.

*/s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

Copies to:
　　All Counsel